# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MARSHA ELLIOTT,

        Plaintiff(s),

v.

TARGET CORPORATION,

        Defendant(s).

2:11-CV-1215 JCM (RJJ)

## ORDER

Presently before the court is defendant Target Corporation's motion for summary judgment. Doc. #23. Plaintiff, Marsha Elliot, has filed an opposition to the motion (doc. #24), to which Target has replied (doc. #25).

**I.    Factual Background**

For the purposes of this motion, the court finds the following facts uncontested. On September 28, 2009, Ms. Elliot entered a Target Store in Las Vegas, Nevada seeking to purchase a mop hook. She located the appropriate hook in the store's home improvement section. The hook was stored in the upper portion of a display case. Below it, wire shelving was stacked, each on their ends, standing in a vertical manner. As Ms. Elliot moved to grab the hook she wished to purchase, it became entangled in the stacked wire shelves, causing a shelf to fall on her foot. Ms. Elliot appears to have suffered compression of a nerve in her foot, requiring medical treatment, including surgery.

. . .

**James C. Mahan**
**U.S. District Judge**

Ms. Elliot filed suit, arguing that Target's negligence in stacking the shelving in such a manner, directly below the mop hooks, caused her injuries. Ms. Elliot alleges that her injuries have required her to take time off work to seek medical treatment, and have resulted in pain, suffering, impairment and disability.

Target has moved for summary judgment, arguing that Ms. Elliot was the primary cause of the accident. Target argues that Ms. Elliot chose to pull the mop hook down even after it became ensnared with the shelf, and this was both negligent and the cause of Ms. Elliot's injuries. Simply put, Target argues that "but for [Ms. Elliot's] actions, the incident would not have happened . . . [c]onsequently, there was no breach of duty by Target." Mot. 5:2-4. Ms. Elliot opposes the motion, citing a string of cases (with little to no application to the instant facts), apparently arguing that the evidence establishes a genuine issue of material fact regarding Target's negligence in choosing to stack the shelves as it did.

**II.    Discussion**

   *A.    Legal Standard*

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

. . .

**James C. Mahan**
**U.S. District Judge**

- 2 -

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

. . .

. . .

   *B.     Analysis*

For a plaintiff to prevail against a defendant on a negligence theory, Nevada law requires the plaintiff to establish four elements: (1) it must be shown that the defendant owed plaintiff a duty of due care; (2) the defendant must be shown to have breached its duty; (3) the breach must be the proximate cause of plaintiff's injury; and (4) the plaintiff must have suffered damages. *Perez v. Las Vegas Med. Ctr.*, 107 Nev. 1 (1991). If a defendant can negate even one of these elements, it is entitled to summary judgment. *Id.* As a comparative negligence jurisdiction, Nevada allows no recovery by a plaintiff where his or her negligence is greater than, or equal to, the negligence of a defendant. NRS § 41.141.

In premises liability cases, "the owner or occupant of property is not an insurer for the safety of an invitee thereon, and in the absence of negligence, there is no liability." *Gunlock v. New Frontier Hotel Corp.*, 78 Nev. 182, 185 (1962). The owner "'is not liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care.'" *Id.* (quoting *Brown v. San Francisco Ball Club*, 99 Cal. App. 2d 484, 486 (1950)). This is because 'obviousness' serves as sufficient warning of danger. *See F.E. Worth v. Reed*, 79 Nev. 351, 354 (1963). On the other hand, where the danger is "hidden, latent, or concealed," an owner must exercise ordinary care by warning the invited guest of the peril. *Id.* Such a duty to warn applies where the owner has actual or constructive knowledge of the danger. *Id.* However, "the obvious danger rule only obviates a duty to warn." *Harrington v. Syufy Enterprises*, 113 Nev. 246, 250 (1997). Thus it is inapplicable where liability is not based on the duty to warn, but on another negligent act. Therefore, where a defendant negligently created the danger or negligently subjected the plaintiff to the peril, liabilities attaches despite the danger being obvious. *Id.*

In *Gunlock*, the plaintiff entered a hotel lobby and injured herself when she tripped on a planter box that was approximately two feet wide, four inches tall, and 30 feet long. *Id.* at 183. The room was kept dimly lit by the hotel, and the planter box itself was concealed by artificial foliage, which was up to two feet high, concealing the planter box and causing her to trip and fall. *Id.* Plaintiff brought suit against the hotel, arguing that the hotel failed in its duty to warn her of the risk

- 4 -

James C. Mahan
U.S. District Judge

1  posed by the planter box in the dimly lit room.  The supreme court found that while the hotel was
2  within its rights to place the planter box where it did, no duty to warn existed, because "plants in a
3  planter, even if artificial, give warning that some sort of supporting material is likely to be present
4  and if the planter is located along the edge of a floor, the danger of stepping into it is obvious." *Id.*
5  at 184.  In essence, the obviousness of the danger negated the duty to warn.

6         In contrast, in *Worth*, the supreme court found that standing water in a hotel room was not
7  "obvious" as a matter of law.  *Id.*  There, the plaintiff knew the danger existed, as her son explained
8  to her that the toilet had flooded and she watched and chatted with the maintenance man as he
9  cleared the clog.  *Id.* at 353.  The maintenance man left the bathroom after clearing the clog for the
10 purpose of retrieving a mop.  Before he could return, plaintiff entered the powder room and fell,
11 injuring herself.  *Id.* at 354.  The court reasoned that it was a question of fact, whether or not the
12 accumulated water was an obvious, or latent, danger.  *Id.*  Accordingly, the failure of the
13 maintenance man to tell plaintiff of the water "could reasonably have been considered by the jury
14 to be a breach of the defendant's duty of ordinary care." *Id.* at 355.  Thus, while the hotel was not
15 negligent in placing the toilet in the room, or sending the repairman to fix the leak, it may have been
16 negligent in failing to tell the plaintiff that the powder room remained slick with water (a condition
17 which the court found was not obvious as a matter of law).

18        While the facts and holdings in both *Gunlock* and *Worth* appear instructional, both cases are
19 inapposite.  In those cases, the supreme court considered suits premised on a landowner's failure to
20 warn an invitee of a danger.  The breach of such a duty, as explained above, is predicated on the
21 "obviousness" of the danger.  Accordingly, the court first turned to whether the danger was obvious,
22 thereby establishing a duty to warn.  Such an exercise required a theory of liability that did not
23 premise the alleged tortfeasor's breach on creating the dangerous situation in the first instance.  *See*
24 *Harrington*, 113 Nev. at 150.  Thus, in *Gunlock*, the court reached the obvious danger issue only
25 after concluding that there was no evidence that the defendant hotel's negligence led to the creation
26 of the danger.  *See Gunlock*, 78 Nev. at 184.  Similarly, in *Worth*, the court only addressed the
27 obviousness of the danger after concluding that the defendant was not negligent in allowing the toilet
28

James C. Mahan
U.S. District Judge

- 5 -

1  to overflow. *Worth*, 79 Nev. at 353.

2  Here, while Ms. Elliot was an invitee that was injured by a condition which may or may not
3  have been obvious, the duty to warn analysis of *Gunlock* and *Worth* are less applicable. The legal
4  theories Ms. Elliot bases her complaint on do not allege only a failure to warn, but they allege
5  negligence in *creating* the condition. In both *Gunlock* and *Worth*, the duty to warn analysis only
6  came after the court found no breach by creating the danger. As previously explained, the hotel was
7  not negligent in decorating its lobby with a planter in *Gunlock* and the hotel in *Worth* breached no
8  duty by providing a toilet in its guestrooms.

9  More in line with the facts of the instant case, is the supreme court's discussion and analysis
10  in *Harrington v. Syufy Enterprises*, 113 Nev. 246 (1997). In that case, the plaintiff was waiting for
11  a friend at a weekend swap meet. She spotted her friend across the parking lot, and walked over to
12  him. The sun was in the plaintiff's face, partially blocking her sight. Nonetheless, plaintiff was
13  aware that a grate with fixed tire spikes was installed across her path. As plaintiff crossed the grate,
14  she tripped on it and fell, injuring her ankle. *Id.* at 247. The supreme court disregarded the
15  "obviousness" of the danger posed by the spikes. Instead, it focused on whether the defendant was
16  negligent in creating an undue risk to its invitee. The court reasoned that "even where a danger is
17  obvious, a defendant may be negligent in having created the peril or in subjecting the plaintiff to the
18  peril." *Id.* at 250 (citing *Moody v. Manny's Auto Repair*, 110 Nev. 320, 333 (1994). Unlike the non-
19  negligent activities of the defendants in *Gunlock* and *Worth*, the court reasoned that a "reasonable
20  juror could conclude that Syufy Enterprises breached its duty of reasonable care by directing
21  pedestrian traffic over a grate containing unretracted tire spikes." *Id.*

22  The court is unpersuaded by Target's attempt to distinguish *Harrington* on the basis of
23  affirmative conduct. Target is contending that because Ms. Elliot affirmatively grabbed the mop
24  hook, thereby causing the shelf to fall, her actions are qualitatively different from those of the
25  plaintiff in *Harrington*, who was simply walking. However, Target's argument fails to acknowledge
26  that the plaintiff in *Harrington* affirmatively walked across the spike strip, despite knowing of its
27  existence, thereby causing her to fall and injure herself. *Harrington* is instructive because in both
28

**James C. Mahan**
**U.S. District Judge**

- 6 -

1   cases the plaintiff was complaining that the owner of land negligently created a hazard to invitees.

2          Similar to *Harrington*, the question posed by the instant case is not the obviousness of any danger posed by the unsecured shelving; but whether Target breached its duty of care by displaying the wire shelves in an unreasonably dangerous manner. The two elements of a prima facie negligence case that Target challenges in the instant motion is whether it breached any duty at all and whether Ms. Elliot's contributory negligence negates proximate cause. Drawing all inferences in favor of Ms. Elliot, the court finds that she has established a genuine issue of material fact regarding whether Target may have breached its duty to provide a reasonably safe environment to business invitees. Target's vertical stacking of the wire shelving, on an unsecured display, in close proximity to goods that may easily be caught on the tines of the wire shelf could be viewed by a jury as an unreasonably dangerous stocking technique. *See id.*

       Target's remaining argument, that Ms. Elliot's comparative negligence caused the accident is similarly without merit.[1] Whether Ms. Elliot's negligence in continuing to pull the hook was greater than Target's possible negligence is a question of fact for the jury to decide. *See Joynt v. California Hotel & Casino*, 108 Nev. 539 (1992); *see also* NRS § 41.141. Target has not produced any evidence allowing this court to conclude, as a matter of law, that Ms. Elliot was more negligent than Target.

       In *Joynt*, the supreme court refused to find comparative negligence as a matter of law, explaining that the "totality of the circumstances must be considered in determining reasonable care and that an ordinarily careful person does not have to watch constantly where he or she is going." *Id.* at 543-544. It follows that this court must consider the totality of the circumstances in deciding

---

[1] It appears that Target has confused the doctrine of contributory negligence with that of comparative negligence. Comparative negligence only bars recovery to the extent that a victim's negligence was greater than the negligence of a tortfeasor. It is generally the jury's duty to apportion fault in such a circumstance. *See* NRS § 41.141. On the other hand, contributory negligence bars any and all recovery where a victim's own negligence played any role in the injury. Nevada's comparative negligence statute eliminates "contributory negligence as a bar to a plaintiff's recovery, at least when negligence of a tortfeasor, or several tortfeasors combined, was as great as plaintiff's or greater." *See Warmbrodt v. Blanchard*, 100 Nev. 703, 707-08 (1984).

**James C. Mahan**
**U.S. District Judge**

- 7 -

whether Ms. Elliot knew the hook was ensnared in the shelf when she pulled the hook from the display. Even if Ms. Elliot did act negligently, her "[c]ontributing fault, if any . . .could reduce [her] recovery . . . but does not negate a finding that [Target's] negligence was a proximate cause of [Ms. Elliot's] injuries. *See id.* at 544.

### III. Conclusion

In light of the forgoing, the court may not find for Target as a matter of law.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant's motion for summary judgment (doc. #23) be, and the same hereby is, DENIED.

DATED August 9, 2012.

_____
**UNITED STATES DISTRICT JUDGE**

**James C. Mahan**
**U.S. District Judge**

- 8 -